UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | | |
|---|---|---|
| **CHARLES RAY GILLMAN**, a Florida resident, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| vs. | ) ) ) | |
| **CROP PRODUCTION SERVICES, INC**., a Delaware corporation, | ) ) ) | |
| Defendant. | ) | |

## NOTICE OF REMOVAL OF CIVIL ACTION

Defendant Crop Production Services, Inc. (hereinafter "CPS") hereby removes the state court action described below to this Court and, in support of its Notice of Removal, states as follows:

## INTRODUCTION

1. On February 7, 2014, Plaintiff Charles Ray Gillman (hereinafter "Plaintiff") filed this action—entitled *Charles Ray Gillman v. Crop Production Services, Inc.*, Case No. 2014-CA-0134—in Santa Rosa County, Florida (hereinafter "the State Court Action"). A true and correct copy of Plaintiff's Complaint is attached as Exhibit A.

2. Plaintiff was a citizen and/or resident of the State of Florida at the time the State Court Action was filed. (*See* Ex. A at ¶ 2) ("Plaintiff . . . resides in Jay, Santa Rosa County, Florida."). Upon information and belief, Plaintiff is still a citizen and/or resident of the State of Florida.

3. At the time the State Court Action was filed, CPS was corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Loveland, Colorado—and it remains so today.

4. In Plaintiff's Complaint, Plaintiff alleged that, in the spring of 2012, he slipped and fell while "stepping up onto the front concrete area of [CPS's] business," causing him to sustain "severe and permanent physical injuries." (Ex. A at ¶ 7.) Plaintiff described the nature and extent of his injuries as follows:

> Plaintiff . . . has been permanently and seriously injured and bruised about the head, neck, back, face and limbs, suffering physical pain and suffering in the past and indefinitely into the future, suffering mental pain in the past and indefinitely into the future, losing the capacity for the enjoyment of life in the past and indefinitely into the future, incurring medical and hospital bills for care and treatment in the past and into the future; all in an amount exceeding Fifteen Thousand Dollars ($15,000.00) . . . .

(Ex. A at ¶ 12.)

5. Plaintiff's Complaint does not otherwise describe the specific amount in controversy. (*See* Ex. A.)

6. Even so, as is discussed further below, on July 10, 2014, CPS finally received medical bills "from which it [could] first be ascertained that the case is one which is or has become removable." *See* 28 U.S.C. § 1446(b)(3). Specifically, on that day, CPS was first able to ascertain that the amount in controversy in this case likely exceeds $75,000, exclusive of interest and costs.

7. Accordingly, CPS's Notice of Removal is timely under 28 U.S.C. § 1446(b)(3), because it was filed within thirty (30) days of July 10, 2014.

8. Therefore, the Court has jurisdiction over this action under 28 U.S.C. § 1332, and this action is removable under 28 U.S.C. § 1441(a), because this is a civil action between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

## **CPS'S EFFORTS TO DETERMINE THE AMOUNT IN CONTROVERSY**

9. Because Plaintiff's Complaint did not disclose the amount in controversy, CPS attempted to determine the amount in controversy through alternative methods.

10. On March 14, 2014, CPS served its First Set of Requests for Admission on Plaintiff. (*See* Ex. B.)

11. In these Requests for Admission, CPS asked Plaintiff, among other things, to "[a]dmit that You allege that Your damages (both past and present) resulting from the Accident exceed $75,000, exclusive of interest and costs." (Ex. B at 2.)

12. CPS also asked Plaintiff to "[a]dmit that You seek damages in excess of $75,000, exclusive of interest and costs, in connection with the claims against Crop Production Services, Inc. in this lawsuit." (Ex. B at 2.)

13. Plaintiff responded to CPS's First Set of Requests for Admission on March 24, 2014. (*See* Ex. C.) However, in his response, Plaintiff refused to answer the Requests for Admission, claiming that he could not "admit or deny for want of knowledge." (Ex. C at 1.)

14. In addition to the Requests for Admission, CPS sent other discovery requests to Plaintiff in an attempt to determine the amount in controversy. Specifically, on March 14, 2014, CPS sent Requests for Production and Interrogatories to Plaintiff. (*See* Exs. D and E.)

15. CPS's Request for Production No. 4 asked Plaintiff to provide "[i]ndividual authorizations for the release of medical records, signed by You and addressed to each health

care provider . . . who has treated You since the Accident which is the subject of this litigation." (Ex. D at 6.)

16. In Interrogatory No. 6, CPS asked Plaintiff to describe "all injuries, whether physical, mental, or emotional, experienced by You in or since the Accident and those claimed to have been caused, aggravated, or otherwise contributed to by the Accident . . . ." (Ex. E at 6.)

17. In Interrogatory No. 7, CPS asked Plaintiff to identify "those injuries which are considered by You to be permanent." (Ex. E at 7.)

18. In Interrogatory No. 8, CPS asked Plaintiff to identify "each Medical Practitioner who has examined or treated You for any of the injuries or symptoms you claim to have been caused, aggravated, or otherwise contributed to by this Accident, [and] State the name, address, and specialty of each Medical Practitioner . . . ." (Ex. E at 7.)

19. Plaintiff responded to these discovery requests on April 23, 2014. (*See* Exs. F and G.)

20. In Plaintiff's response to Request for Production No. 4, he stated that "[a] signed authorization for release of medical records is provided with this response." (Ex. F.) A copy of the release that Plaintiff provided is attached as Exhibit H.

21. In Plaintiff's Response to Interrogatory No. 6, he revealed that "he injured [his] back and both knees . . . tore cartilage in [his] right knee and . . . herniated disks in [his] upper back and lower back." (Ex. G at ¶ 6.)

22. In response to Interrogatory No. 7, Plaintiff stated that "[m]y knee is permanently damaged . . . I had a titanium implant put in a while ago and it now bothers me every day [and] I also have severe lower back pain daily—the worst pain I ever had." (Ex. G at ¶ 7.)

23. Also, in response to Interrogatory No. 8, Plaintiff claimed that three medical providers were relevant to determining the amount of his damages: (1) Evergreen Medical Clinic; (2) Baptist Hospital; and (3) Dr. Michael Hartsfield. (Ex. G at ¶ 8.)

24. Despite this additional information, as of that time, Plaintiff's responses did not demonstrate by a preponderance of the evidence that the amount in controversy was above $75,000, exclusive of interest and costs.

25. In the months of May and June, CPS began to receive a voluminous number of medical records relating to Plaintiff's past medical history pursuant to the signed release that Plaintiff provided in response to CPS's Requests for Production.[1] However, CPS did not receive corresponding medical bills along with most of these records until July 10, 2014.

26. On June 25, 2014, CPS again served Requests for Admission on Plaintiff in an attempt to determine whether—after the receipt of the first group of medical records—Plaintiff understood that the amount in controversy requirement had been met. (Ex. I.)

27. On July 1, 2014, Plaintiff responded to the second set of Requests for Admission by stating, once again, that he could not "admit or deny" that the amount in controversy exceeded $75,000 "for want of knowledge." (Ex. J.)

28. On July 10, 2014, CPS received copies of medical bills from Baptist Hospital pursuant to the release of medical records that Plaintiff provided in response to CPS's Request for Production. (*See* Ex. K.) Also, as was mentioned above, Plaintiff referenced these bills from "Baptist Hospital" in his response to CPS's Interrogatory No. 8. Again, Interrogatory No. 8 had requested that Plaintiff identify "each Medical Practitioner who has examined or treated You for

---

[1] With one exception, CPS has not attached copies of Plaintiff's medical records/bills hereto based on confidentiality and privacy issues. CPS will provide copies of the bills referenced herein (as well as the related medical records as may be appropriate) for an *in camera* review at the request of the Court, or upon the entry of a Protective Order.

5

any of the injuries or symptoms you claim to have been caused, aggravated, or otherwise contributed to by this Accident . . . ."  (Ex. G at 2.)

29. These medical bills showed that Plaintiff incurred $238,882.85 of medical expenses in connection with an incident that occurred in or about June 2013.  (Ex. K.)

30. Although this incident is not the same incident that allegedly occurred at CPS in 2012, these medical bills are the only records that CPS received from "Baptist Hospital" that post-date Plaintiff's alleged slip and fall at CPS.  Accordingly, Plaintiff's Interrogatory responses confirm that he alleges that these expenses are connected to the alleged slip and fall at CPS, and that he seeks to recover these expenses in this case.

31. In addition, CPS received medical bills from: (1) Andrews Institute on June 17, 2014, totaling approximately $2,200; (2) Dr. Michael Hartsfield on June 25, 2014, totaling approximately $3,000; and (3) Jay Hospital on July 10, 2014, totaling approximately $13,300 (for services rendered between March 10, 2012 and June 8, 2012).  These bills relate to services rendered in the same timeframe as Plaintiff's alleged slip and fall at CPS.

32. Also, previously, in Plaintiff's April 23, 2014 Responses to CPS's Interrogatories, Plaintiff had disclosed that he had experienced $9,673 of medical expenses from Evergreen Medical Clinic.  (*See* Ex. G at 2.)

### THE AMOUNT IN CONTROVERSY REQUIREMENT IS MET BASED ON PLAINTIFF'S MEDICAL EXPENSES AND OTHER CLAIMED DAMAGES

33. The amount in controversy requirement imposed by 28 U.S.C. § 1332 is met in this case.

34. In that regard, while the removing party bears the burden of establishing that the amount in controversy exceeds the jurisdictional requirement, a removing defendant is not required to prove the amount in controversy beyond all doubt.  *See Gomez v. Am. Sec. Ins. Co.*,

2014 U.S. Dist. LEXIS 25976 (M.D. Fla. Feb. 28, 2014).

35. Rather, under 28 U.S.C. § 1446(b)(3), the removing party need only show that the amount in controversy is satisfied by "a preponderance of the evidence." *Id.*; *see also Musgrove v. Kellogg Brown & Root, LLC*, 2013 U.S. Dist. LEXIS 61161 (S.D. Ala. Apr. 29, 2013) (noting that Congress has rejected a higher standard) (citing *SUA Ins. Co. v. Classic Home Builders, LLC*, 751 F. Supp. 2d 1245 (S.D. Ala. 2010)); *Exum v. State Farm Fire & Cas. Co.*, 821 F. Supp. 2d 1285 (M.D. Ala. 2011) (same).

36. Also, where a plaintiff's complaint does not itself reveal the amount in controversy, the court can look to other evidence that is relevant to the amount in controversy at the time the case was removed. *Musgrove*, 2013 U.S. Dist. LEXIS 61161 at *13-14.

37. Finally, a court may find the jurisdictional threshold satisfied based on "evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).

38. In Plaintiff's Complaint, he stated that he is seeking to recover damages for the following:

    a. "[P]ermanent[] and serious[] injur[ies]" including "bruise[s] about the head, neck, back, face and limbs";

    b. "[P]hysical pain and suffering in the past and indefinitely into the future";

    c. "[M]ental pain in the past and indefinitely into the future";

    d. The loss of "the capacity for the enjoyment of life in the past and indefinitely into the future"; and

    e. "[M]edical and hospital bills for care and treatment in the past and into the future . . . ."

(Ex. A at ¶ 12.)

39. As admitted in Plaintiff's Responses to CPS's Requests for Admission (on two

separate occasions that were several months apart from each other), without more, these allegations did not show that Plaintiff was seeking damages in excess of $75,000, exclusive of interest and costs.  (Ex. C.)

40.    The first date on which CPS could ascertain that the amount in controversy exceeds $75,000 was July 10, 2014, when CPS received medical bills showing expenses of $238,882.85 from Baptist Hospital.

41.    In that regard, evidence of medical expenses greater than $75,000 is sufficient to establish that the amount in controversy meets the jurisdictional requirement.  *See, e.g.*, *La Rocca v. Stahlheber*, 676 F. Supp. 2d 1347 (S.D. Fla. 2009) (denying motion to remand where medical bills received to date combined with estimate of future medical bills exceeded $75,000); *Henderson v. Dollar General Corp.*, 2009 U.S. Dist. LEXIS 29903 (S.D. Ala. April 7, 2009) (finding that the amount in controversy requirement had been met where the plaintiff's slip and fall injury resulted in $57,328 in medical bills and $9,000 in lost earnings, and the defendant presented deposition testimony of plaintiff showing the need for future treatment); *May v. Wal-Mart Stores, Inc.*, 751 F. Supp. 2d 946, 953 (E.D. Ky 2010) (remanding for lack of evidence regarding the amount in controversy but noting that, following additional discovery, the plaintiff might "produce large medical bills," making removal appropriate).

42.    Although Plaintiff's claimed medical expenses alone are sufficient to establish the amount in controversy requirement, his request for damages for pain and suffering for allegedly permanent injuries to multiple parts of his body also support removal.  *Henderson*, 2009 U.S. Dist. LEXIS 29903, *10-*11 (S.D. Ala. Apr. 7, 2009) (stating that a "'fair and impartial mind' would clearly find that years of pain in addition to the other elements of damage . . . add up to [at least $10,000]").

43.     In short, given Plaintiff's current medical bills of more than $250,000, his allegations of pain and suffering, his claims of permanent injuries, as well as the claimed need for future treatment of these allegedly permanent injuries, it is clear that the amount in controversy in this action exceeds $75,000.

## CONCLUSION

44.     Copies of all documents filed in the State Court Action are attached hereto.[2] There are no matters in the State Court Action that need to be resolved by this Court.

45.     Pursuant to 28 U.S.C. § 1446(d), Defendant is serving a copy of this Notice of Removal on all adverse parties, and will promptly provide notice of the filing of this Notice of Removal to the Clerk of the Circuit Court of Santa Rosa County, Florida.

WHEREFORE, Defendant prays that the action now pending against it in the Circuit Court of Santa Rosa County, Florida, be removed to this Court and proceed therein.

Dated: July 22, 2014          /s/ Charles Wiggins
                              CHARLES WIGGINS
                              Fla. Bar No.: 0048021
                              ctw@beggslane.com
                              501 Commendencia Street
                              Pensacola, FL 32502
                              (850) 432-2451

                              BEGGS & LANE, RLLP

                              **Attorneys for Defendant Crop Production Services, Inc.**

---

[2] The remainder of the filings in the State Court Action are attached as Exhibit L.

**CERTIFICATE OF SERVICE**

      I CERTIFY that a copy hereof has been furnished to the counsel of record listed below by e-mail on the 22nd day of July, 2014:

    Jonathan I. Rotstein
    Law Office of Rotstein & Shiffman
    309 Oakridge Blvd., Suite B
    Daytona Beach, FL  32118
    a.mccollum@rotstein-shiffman.com
    d.wilborn@rotstein-shiffman.com
    s.colosimo@rotstein-shiffman.com


     /s/ *Charles Wiggins*
    CHARLES WIGGINS
    Fla. Bar No.:  0048021
    ctw@beggslane.com
    501 Commendencia Street
    Pensacola, FL 32502
    (850) 432-2451

    BEGGS & LANE, RLLP

    **Attorneys for Defendant Crop Production Services, Inc.**